# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

****************************

UNITED STATES OF AMERICA,
        Plaintiff

vs.                              Case No. 1:19-mj-06086-MPK-1

ERIC TRAN THAI,
        Defendant

****************************

TRANSCRIPT OF INITIAL APPEARANCE
BEFORE THE HONORABLE M. PAGE KELLEY
AT BOSTON, MASSACHUSETTS
ON MARCH 11, 2019

APPEARANCES:

For the Plaintiff:
Anne Paruti, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
617-748-3310

For the Defendant:
Oscar Cruz, Jr., Esquire
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, Massachusetts 02210
617-223-8061

ALSO PRESENT:
Ashley Berry, Probation Officer


Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

-----------------------------------------------------

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**k.aveyard@comcast.net**

```
 1                    P R O C E E D I N G S

 2

 3          THE CLERK:  Today is March 11, 2019, and we are on the

 4    record in Magistrate Case No. 19-6086, United States of America

 5    versus Eric Tran Thai, the Honorable M. Page Kelley presiding.

 6          Would counsel please identify themselves for the

 7    record.

 8          MS. PARUTI:  Good afternoon, your Honor.  Anne Paruti

 9    for the Government.

10          THE COURT:  Good afternoon.

11          MR. CRUZ:  And Oscar Cruz for Mr. Thai.

12          THE COURT:  Good afternoon.  Good afternoon, Mr. Thai.

13          So, Mr. Thai, this is your initial appearance in

14    Federal Court.  This is not a trial today.  The purpose of this

15    hearing is for me to tell you first about your right to remain

16    silent, and then to make sure you have a lawyer representing

17    you.  We'll ask the Government's position on detention and a

18    few other matters.

19          So, first of all, I have to tell you that you have the

20    right to remain silent.  Anything you say can be used against

21    you.  If you decide to answer questions or make a statement,

22    you can stop talking at any time if you change your mind.  You

23    also have the right to have a lawyer represent you and be with

24    you if you decide to answer questions or make a statement.

25          Do you understand your right to remain silent?
```

1            THE DEFENDANT:  Yes.

2            THE COURT:  You also have the right to have an

3     attorney represent you.

4            Do we have an affidavit, Mr. Cruz?

5            MR. CRUZ:  Yes.  I just need for him to sign it and I

6     can pass it up.

7            THE COURT:  Okay.  Thank you.

8            (Pause.)

9            THE COURT:  So, sir, you can always hire your own

10    lawyer if you want to.

11            (Pause.)

12            THE COURT:  I'm going to appoint counsel for you here,

13    but this may be subject to your being required to contribute

14    something toward your counsel, and I'll take that up at another

15    date.  But I will appoint Mr. Cruz to represent you.

16            MR. CRUZ:  Thank you, your Honor.

17            THE COURT:  So, sir, have you seen the Complaint in

18    this case?

19            THE DEFENDANT:  Yes.

20            THE COURT:  So I'm not asking you if you did anything

21    wrong, but do you understand, at least in a general way, what

22    it is that they're charging you with.

23            THE DEFENDANT:  Yes.

24            THE COURT:  Okay.  So you can be seated and I'll ask

25    the Government to state the charges and the maximum possible

1    penalties.

2         MS. PARUTI:  Your Honor, the defendant is charged with

3    violating Title 18, United States Code, Sections 2251(a) and

4    (e), which are known as sexual exploitation of children and

5    attempt to commit violations of that statute.  As laid out in

6    the Complaint, the allegations are that he violated that

7    statute on several dates ranging, as charged in the Complaint,

8    from May 2, 2017 through and including November 6 of 2017 on at

9    least five separate occasions.  Violation of that statute

10   carries a maximum term, or conviction, I should say, of a

11   violation of that statute, carries a maximum term of

12   incarceration of 30 years on each count, with a mandatory

13   minimum term of 15 years incarceration.  Conviction carries up

14   to a $250,000 fine, a term of supervised release from five

15   years to life, a mandatory special assessment of $100, and a

16   discretionary special assessment of an additional $5,000,

17   pursuant to Title 18, United States Code, Section 3014.  The

18   defendant would also be subject to restitution and forfeiture.

19        THE COURT:  And what is the Government's position on

20   detention, Ms. Paruti?

21        MS. PARUTI:  Your Honor, the Government notes that

22   these are very serious allegations, and specifically, in light

23   of the mandatory minimum that he faces upon conviction, the

24   Government has serious concerns about the risk that the

25   defendant poses as a danger to the community, as well as the

1    risk of flight that he poses to this Court.  However, the

2    Government believes, in discussing the matter with the

3    Probation Department, that there are conditions that can

4    mitigate those risks sufficiently to ensure that he does not

5    pose an unrestricted danger to the community and that he will

6    appear for trial.

7         The Government substantially agrees with the

8    conditions that are recommended in the Pretrial Services

9    Report, the Bail Report, which I believe the Court has before

10   her, specifically noting that one of the conditions is home

11   detention with electronic location monitoring, and that one of

12   the specific conditions is that he be prohibited, to the extent

13   he's allowed out of his home for any reason, whether it be for

14   work or medical, religious, or legal purposes, that he stay

15   away from and have no contact with any type of school or other

16   place where children congregate or are likely to be found; and

17   finally, that he have -- that he be prohibited from possessing

18   any device whose sole purpose is to make video recordings.

19        To the extent that the defendant possesses any devices

20   that have ancillary functions that include recording, such as,

21   for example, a telephone, the Government suggests that it would

22   be appropriate that he log -- identify and log all of those

23   devices with Probation so that Probation is fully aware of any

24   devices that might have, like I said, that ancillary

25   capability.

1          The Government also suggests that the other more

2     standardized conditions that have been proposed by Probation be

3     imposed, and that those in total would suffice to mitigate the

4     danger that he poses and the risk of flight that he poses.

5          THE COURT:  Okay.  Mr. Cruz?

6          MR. CRUZ:  Can I have a moment, your Honor?

7          THE COURT:  Yes.

8          (Pause.)

9          MR. CRUZ:  Your Honor, we are in agreement with the

10    Government's requested and Probation's requested conditions

11    with one caveat.  I understand that the Adam Walsh Act requires

12    the Court to impose a monitoring condition; however, how that

13    monitoring condition is effectively used is within the Court's

14    discretion.  I'm asking that the Court consider setting a

15    curfew in this case that's monitored with a bracelet.  The

16    reason for that is Mr. Thai has been on law enforcement radar,

17    shall we say, since this situation came to their attention over

18    a year ago.  So he was investigated by State law enforcement

19    authorities.  There's a case pending in the Middlesex Superior

20    Court that led to discovery of other information that presents

21    the charges before this Court, but that information has been in

22    the possession of law enforcement for well over a year now.  He

23    has been on release on conditions out of the State Superior

24    Court, and I'm asking that the Court, understanding that it has

25    to file or set a monitoring condition, that it do a curfew of

1    11 p.m. to 6 a.m.  That would allow him to work.  He is

2    employed currently.  That would allow him to do -- go about his

3    normal business as he has for months now under law enforcement

4    scrutiny, shall we say, and supervision.  But other than that,

5    we're in the agreement with the conditions that have been

6    suggested.

7              THE COURT:  Yes?

8              MS. PARUTI:  So I do definitely acknowledge, and it's

9    laid out quite clearly in the Complaint, that State law

10   enforcement authorities were aware of Mr. Tran -- excuse me,

11   Mr. Thai's activity and he has been on release in this state

12   since March of last year.  I will say that he faces penalties

13   associated with misdemeanor charges in this state.  Here, he's

14   facing much more severe penalties, which I think clearly --

15   much more severe penalties, which clearly ups his risk of

16   flight.

17             The danger here is different as well when we're

18   talking about in the state system him being charged with

19   offenses against adult victims, which, you know, whether I

20   believe a misdemeanor is sufficient to capture the gravity of

21   those offenses is irrelevant.  Here, we're talking about him

22   going into a school over a series of months and videotaping

23   children in the bathroom on several occasions.  The danger that

24   he poses is being able to leave his home, and that primarily is

25   the reason why the Government believes in this particular case

1    that home detention is a suitable mitigator when the Court has

2    to evaluate the danger that he actually poses by the behavior

3    that he is alleged to have committed.

4           Here, the Government believes that if he is released

5    on conditions that include home detention, the Court very well

6    can accommodate his ability to work, and most likely has a

7    desire that he work, while he's on pretrial release to whatever

8    extent he can.  It may be difficult now that these charges are

9    pending, understandably, but to the extent he can obtain work

10   or maintain the work that he has, the Government is aware that

11   in many other cases the Probation Department has worked quite

12   well with offenders, with pretrial defendants, in ensuring that

13   they're able to work while they're balancing that need and the

14   benefit that that might bring to the defendant and, for

15   example, his mental health, throughout the pretrial process,

16   balancing that with the needs of the community.  I think here,

17   having him on a curfew really doesn't mitigate the danger in

18   any way because we're not talking about a GPS device, we're

19   talking about location monitoring, which is making sure he's in

20   his home where the Government doesn't see him as posing a

21   danger.

22          The Government, at this point, I will note the

23   forensic examination is still ongoing given the huge volume of

24   data that was seized back in March of 2018 by State authorities

25   and which is still being examined by professionals, but at this

1    point we don't have any information that he, for example,

2    distributed any of the images that he took of those children at

3    Boston Latin.  Without that danger, which is very hard to

4    mitigate when somebody is in their home, given the availability

5    of the internet on such a wide variety of devices, given that

6    we don't know that he poses that particular danger, I think the

7    home detention is something that can work here.

8         If the Court is not inclined to order home detention,

9    the Government doesn't see the conditions that have been

10   proposed by Probation as truly mitigating the risk here, and

11   perhaps I would be better suited to move for detention then,

12   understanding that with this particular crime there is a

13   presumption for detention.  The Government has looked at that

14   and is evaluating it, and has taken into consideration what

15   Mr. Cruz raises, that law enforcement, in some aspect or some

16   respect, has been aware of Mr. Thai.  He has been under some

17   guidance, court guidance, but I would say the stakes are

18   measurably higher now for him, and we know more about his

19   alleged criminal behavior at this point.

20        So I don't think that this Court is in the same

21   situation as, for example, the Middlesex Court was when it was

22   evaluating what types of conditions were appropriate to monitor

23   him.  I'm specifically giving the difference in the crimes with

24   which he's been charged and the underlying behavior that those

25   crimes represent.

1           MR. CRUZ:  Your Honor, I understand this is a serious

2     charge.  What I will repeat is that the Government has had the

3     information related to these charges for at least a year, and

4     that is from the date that the evidence in this case was seized

5     back in March of 2018.  There was an investigation that moved

6     quickly after that where they were able to identify these

7     individuals from the local high school.  That did not prompt

8     action in terms of a quick arrest of Mr. Thai.  Any concerns

9     about his being in the community were not raised at that point

10    because I'm sure that law enforcement -- I don't want to

11    speculate, but I'm sure that the law enforcement individuals

12    involved were satisfied that the conditions set by the State

13    Court were sufficient.

14          THE COURT:  Okay.  My thinking about this is I

15    understand the Government and Probation are both recommending

16    release.  To me, this is a very serious crime, and I think

17    indicates that there's very strong evidence, and it does

18    indicate a very serious threat to the safety of the community.

19    So I'm willing to go along with the recommendation of Probation

20    and the Government in this case, but I'm not going to assume

21    that when he's charged with misdemeanors out of State Court,

22    his supervision, either from State Court or based on those

23    specific charges, was anywhere near what this Court would

24    require.

25          I mean, that's an interesting data point, that he's

1    been on release.  I'm glad he hasn't had any problems.  But

2    this is a different court and a different -- I'm going to

3    impose a different set of requirements.

4          So I do have a question concerning the financial

5    affidavit.

6          Is there equity in the condo unit?

7          MR. CRUZ:  There is, your Honor, and we spoke about

8    this somewhat during the course of the interview.  My

9    understanding is it's a city-owned property, and what value he

10   has, in terms of equity, I guess is what we're not a hundred

11   percent sure about at this point.  But if the property were to

12   be sold, it wouldn't be at market value.  It would be whatever

13   the city deems the value of the property to be at any given

14   time.

15         THE COURT:  I see.  Okay.

16         MR. CRUZ:  So it would be less than what market value

17   would be.

18         THE COURT:  Okay.  And is there any possibility of a

19   third-party custodian, perhaps not living with him, but someone

20   who would be able to check in with him?

21         MR. CRUZ:  I have his brother, who is in the courtroom

22   today.  I can check with him to see if that would be

23   appropriate.

24         He's nodding his head.  I'm assuming that means yes.

25         THE COURT:  Alright.  So I'll speak with you in just a

1    minute, sir, about that.  Actually, why don't you just step

2    forward.  If you'd just step up to the bar here.

3              Would you state what your name is, please, sir.

4              ALEX THAI:  My name is Alex Thai.

5              THE COURT:  And you are Mr. Thai's brother?

6              ALEX THAI:  Older brother.

7              THE COURT:  Older brother.

8              And you live locally?

9              ALEX THAI:  Yes.

10             THE COURT:  So what I would like to do is to appoint

11   you as a third-party custodian, and what that would mean is

12   that you will check in with your brother at least by phone

13   every day, and that if you have any indication that he is not

14   abiding by the conditions of his release, that you will report

15   it to the court.

16             For example, if he seems not to be in the district or

17   not to be obeying his conditions, and I am going to put him,

18   basically, under house arrest.  So one of the fears we have

19   with people who are living alone under those conditions is that

20   they -- it's hard to be under house arrest by yourself

21   somewhere.  So I would ask you to check in on him in person.

22   I'm not going to set any certain time, but just to make sure

23   that he's okay.

24             Are you willing to do that?

25             ALEX THAI:  Yes.

1        THE COURT:  Okay.  So Probation will talk to you about

2   that responsibility and it's very serious, so I really

3   appreciate your being willing to do that.

4        So you'll talk to him at least every day and see him

5   periodically to see how he's doing, and if he appears not to be

6   abiding by his conditions of release, you will report that to

7   Probation, okay.

8        ALEX THAI:  Yes.  I understand.

9        THE COURT:  Thank you, sir.

10       So...

11       MR. CRUZ:  Your Honor, Mr. Thai has asked that I

12  mention to the Court that he's concerned about continued

13  communication and visitation with his family.  His parents live

14  locally and I know that his mother is not doing well, in terms

15  of her physical health.  He wants to be able to visit her and

16  wanted me to let the Court know about his concerns.

17       THE COURT:  Okay.  So, Mr. Thai, I'm just going to go

18  through the conditions of your release, but I'll certainly

19  address that.  That's a very valid concern, so I'll address

20  that.

21       So, first of all, you'll be given a copy of these

22  conditions and you'll sign them today when you're released.

23  You must familiarize yourself with them.  If you have any

24  questions about whether you're allowed to do something or not,

25  you need to check with the probation officer who you'll be

1    assigned before you do it, because later, if you don't abide by

2    your conditions, saying that you didn't understand what they

3    were is not a good excuse.  It's on you to understand what they

4    are and follow them.

5            So, first of all, you may not violate any federal,

6    state or local law while you're on release.  You must cooperate

7    in the collection of a DNA sample if it's authorized, you must

8    not change your address or your phone number without talking to

9    Probation and getting their approval, and you must appear in

10   court as required.  If you're sentenced to serve time and

11   you're allowed to self-report, you must show up and report to

12   serve your sentence.

13           So I'm going to have you sign a $10,000 unsecured

14   bond, which means if you violate any condition -- it's a

15   condition of release bond.  So if you violate any condition of

16   your release, and I'm just going to check that off here, or

17   fail to appear, you will owe the Court $10,000, okay.  So you

18   really must abide by your conditions.

19           So you will submit to supervision by Pretrial

20   Services.  You'll have a Pretrial Services Officer.  If they

21   need to reach out to you by phone, you have to be reachable.

22   So don't let your phone fill up with messages.  If they call

23   you and you miss the call, you need to call them right back.

24           You must continue employment.

25           Is there a passport?

1          MR. CRUZ:  It's in the possession of state

2     authorities.

3          THE COURT:  Okay.  So the state authorities will keep

4     your passport and you are not to acquire any new passport or

5     travel document while this case is pending.  Your travel is

6     restricted to Massachusetts.

7          You must avoid all direct or indirect contact with any

8     person who is or may be a victim or witness in this

9     investigation or prosecution.

10         You're going to get mental health treatment, as

11    directed by the Probation Office.  You might have to pay for

12    the monitoring if you -- based on ability to pay.

13         So with regard to your treatment, you are going to get

14    treatment.  You must sign releases to let Probation know that

15    you are attending treatment, and I'll leave it up to you and

16    your lawyer as to what other releases you sign, so that not

17    everything you say to your treatment provider will have to be

18    relayed to Probation, given your situation.  That might inhibit

19    you from having treatment.  But I want you to go to treatment

20    as directed and give Probation enough authority to get the

21    information that are going to treatment as you are supposed to.

22         Obviously, if there are further questions about this,

23    Mr. Cruz is very familiar with this and he can contact the

24    Government and the Court, and we'll work it out if there's any

25    problems.

1        You may not possess a firearm, destructive device or

2   other weapon.  You're going to be on home detention and you

3   must stay in your residence at all times, except for

4   employment, education, religious services, medical, substance

5   abuse or mental health treatment, attorney visits, court

6   appearances, court-ordered obligations, such as seeking the

7   treatment that I just spoke of, or other activities approved in

8   advance by Pretrial Services.  I'm going to direct Probation

9   that if you need to see your family, you may be released from

10  your home to go and see your family, okay.

11        THE DEFENDANT:  Thank you.

12        THE COURT:  And if you have continuing issues with

13  this with Probation, which I don't think you will, because I

14  rarely hear back from people, but if you do, talk to Mr. Cruz

15  and I'm happy to revisit and clarify matters.

16        So you'll submit to location monitoring.  You must pay

17  for that as you can afford it.  If you have any contact with

18  law enforcement at all, you must report that to your probation

19  officer.  Even if someone comes to your door and it has nothing

20  to do with you, you will still report that to Probation within

21  24 hours.

22        You may not possess any device, the sole purpose of

23  which is video recording.  You must report to the probation

24  officer any devices you have that are capable of taking

25  pictures or doing video recordings and allow them to see those

1    devices, and they will direct you about whether you can have

2    them and under what conditions.  So I'm going to leave that up

3    to Probation.  Again, if you have issues with that, you can

4    come back to the Court.

5            You may not have any direct or indirect unsupervised

6    contact with anyone under the age of 18, and that includes

7    relatives.  If you're going to see your parents and there's

8    anyone under the age of 18 there, you cannot have unsupervised

9    contact with them.  Do not frequent or loiter in any place

10   where children under the age of 18 are likely to congregate,

11   including schools, parks, playgrounds, libraries, fast food

12   restaurants, et cetera.  Again, if you have questions about

13   whether you want to go somewhere and you don't know if you can

14   go there or not, you should okay it with the Probation Office

15   before you go.

16           So now I'm going to tell you what happens if you

17   violate any condition of your release.  First of all, the

18   conditions of your release are mandatory, and if you do not

19   obey them, you may be subject to having your $10,000 taken

20   away, and then you will owe the court $10,000, or you will get

21   your release revoked, and/or.  So if you violate the conditions

22   of your release, I can revoke your release and hold you until

23   the case -- detain you until the case is over.

24           Then this is also -- these release conditions have the

25   force of a court order.  So if you violate them, you're

1    violating a court order and you can be prosecuted for contempt

2    of court.

3         If you fail to come to court when you're required,

4    that is a crime in and of itself, and any time you might get

5    for the crime of failure to appear would have to be on and

6    after any time you might get in this case.

7         If you commit a new crime while you're out on release,

8    that is a crime.  It's the crime of committing a crime while on

9    release, and any time you would get for that would have to be

10   on and after any time you would get in this case.

11        So it's a felony under federal law, punishable by

12   imprisonment and a fine, to intimidate or attempt to intimidate

13   a witness, victim, informant, cooperating witness; to obstruct

14   any criminal investigation.  Your lawyer can talk to you more

15   about what obstruction of justice is, but it means trying to

16   stop information from going to the police, in one form.  So if

17   you have any questions about anything you might think of doing,

18   you should go through your lawyer.  It is also a felony to

19   tamper with a witness, victim or informant, or retaliate

20   against a witness, victim or informant.

21        So anything else about the conditions?

22        PROBATION OFFICER BERRY:  No, your Honor.  Thank you.

23        MS. PARUTI:  No, your Honor.  Thank you.

24        MR. CRUZ:  No.  Thank you, your Honor.

25        THE COURT:  Okay.  So do you understand what I've

1    said?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Okay.  So you'll get these in writing,

4    you'll sign them, you'll sign the unsecured bond, and if you

5    have any questions, you should direct them to your lawyer or

6    your Pretrial Services Officer.

7            Because this is a Complaint, we do not have any next

8    date.

9            What about the preliminary hearing, Mr. Cruz?

10           MR. CRUZ:  Can I have a moment, your Honor?

11           (Pause.)

12           MR. CRUZ:  Your Honor, I've discussed with Mr. Thai

13   his right to a preliminary hearing.  He would waive the

14   preliminary hearing at this point.  Thank you.

15           THE COURT:  Okay.  So you're entitled to a hearing

16   where the Government would just have to show there's probable

17   cause to believe you committed the crimes that you're charged

18   with, and your lawyer is telling me you don't wish to have that

19   hearing.

20           Is that right?

21           THE DEFENDANT:  Correct.

22           THE COURT:  Okay.  So I'm going to find that your

23   waiver of that hearing is knowing and voluntary.

24           So anything else today?

25           MS. PARUTI:  No, your Honor.

```
1              MR. CRUZ:  No, thank you.

2              THE COURT:  Alright.  Thank you very much.

3

4              (The hearing was concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>C E R T I F I C A T I O N</u>

I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 20 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

<u>/s/ Karen M. Aveyard</u>

Karen M. Aveyard

<u>March 21, 2019</u>

Date