# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

***************************

UNITED STATES OF AMERICA,
        Plaintiff

vs.                                Case No. 1:19-mj-06086-MPK-1

ERIC TRAN THAI,
        Defendant

***************************

TRANSCRIPT OF BAIL REVIEW HEARING
BEFORE THE HONORABLE M. PAGE KELLEY
AT BOSTON, MASSACHUSETTS
ON MARCH 19, 2019

APPEARANCES:

For the Plaintiff:
Anne Paruti, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
617-748-3310

For the Defendant:
Oscar Cruz, Jr., Esquire
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, Massachusetts 02210
617-223-8061

ALSO PRESENT:
Chrissy Murphy, Probation Officer


Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

-----------------------------------------------------
**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**k.aveyard@comcast.net**

1                    P R O C E E D I N G S

2

3          THE CLERK:  Today is March 19, 2019, and we are on the

4   record in Criminal Case No. 19-6086, the United States versus

5   Eric Tran Thai, the Honorable M. Page Kelley presiding.

6          Could counsel and Probation please identify themselves

7   for the record.

8          MS. PARUTI:  Good afternoon, your Honor.  Ann Paruti

9   for the Government.

10         THE COURT:  Good afternoon.

11         MR. CRUZ:  Good afternoon.  Oscar Cruz for Eric Thai.

12         THE COURT:  Good afternoon.

13         PROBATION OFFICER MURPHY:  And Chrissy Murphy for

14   U.S. Probation.

15         THE COURT:  Good afternoon.

16         So we had a detention hearing previously at which I

17   think I asked Mr. Thai's brother to be a third-party custodian,

18   and I don't think that had been -- anyone had spoken with him

19   about that prior to the hearing.  I think that was just done

20   kind of at the hearing.

21         Also, as we usually do in cases such as this, we did

22   not do a home visit, which we -- that's usually done prior to

23   releasing someone in a case like this.  I also did not

24   understand the details of Mr. Thai's schedule or what kind of

25   counseling he's engaged in.

```
 1           So I asked Ms. Murphy, after she did the home visit,

 2   to report back to me.  She filed a report which is under seal

 3   because it contains a lot of personal information about

 4   Mr. Thai, including psychological counseling, et cetera, and so

 5   I wanted to have this hearing.

 6           I think under the circumstances, I'm going to reopen

 7   the hearing and I want to hear argument again on release

 8   because I'm just very concerned about the efficacy of what

 9   we've put in place.  I would also just like to say that I did

10   intend to impose GPS monitoring.  I think there are different

11   kinds of electronic monitoring, and it was not my intention

12   that Mr. Thai be released simply to basically have a curfew,

13   and I do agree with Ms. Murphy's concerns about lengthy

14   absences from the house.

15           So I think I'll hear from you first.

16           MS. PARUTI:  From me?

17           THE COURT:  Yes.

18           MS. PARUTI:  Thank you.

19           Your Honor, the Government also -- well, I know that

20   in most cases where defendants are released with some sort of

21   electronic monitoring, typically it is location monitoring.  So

22   I perhaps hadn't appreciated the possibility of GPS monitoring

23   in this particular circumstance either.  I do think in general

24   the Government prefers GPS monitoring, but I know that there

25   are practicalities involved.  In this case, it seems that
```

1    Probation concurs, and that it would be a feasible option if

2    some sort of release the community under strict conditions is

3    something that still seems like a viable alterative at this

4    point when we have some more information.

5         The Government also had considered home detention to

6    be what I think the term we're using here and in Ms. Murphy's

7    report is home incarceration, and, in fact, that was what the

8    Government's intent was in seeking that as a condition.  I

9    understand that some of the differences may be semantic, but I

10   think what Ms. Murphy points out in her report to the Court

11   makes sense and is informative, and I think really drives where

12   this issue should go.

13        So specifically with home -- the Government also did

14   not anticipate that home detention would envision the type of

15   freedom of movement that appears based on -- appears to be

16   happening based on Mr. Thai's current therapeutic regime.  I

17   was just discussing very briefly and superficially with

18   Ms. Murphy before the hearing whether or not a mental health --

19   to the extent that the Court believes that a mental health

20   component is important for a defendant who is relegated to his

21   home for what will likely be a somewhat lengthy period of time

22   pending trial in a case that carries very serious charges with

23   serious implications, both incarcerative and otherwise, whether

24   mental health is a necessary piece of that.  I think in most

25   circumstances it is, but I think that there's a way to achieve

1    that, specifically if -- well, looking at a few different

2    factors.  In light of and in the context of the mental health

3    component of this, if the Court believes that home

4    incarceration is in fact a viable alternative, I think that

5    some attention to the defendant's mental health is probably the

6    more responsible outlook to take from the Court's perspective,

7    given, as the Court mentioned that our initial detention

8    hearing, sort of the way some defendants tend to react to being

9    charged with cases of this -- with crimes of this nature.  I

10   think though that it can be achieved in a much more, I don't

11   want to say efficient, because I don't want to imply that I

12   have any insight into Mr. Thai's mental health, but from a time

13   and space perspective, I think that it can be done in a way

14   that is more respective of the idea of home incarceration or

15   home confinement, or whatever term that we should be using to

16   effect what should be effected here.  I think what should be

17   effected here is with Mr. Thai's freedom of movement being

18   curtailed significantly to the point where the only next step

19   is actual incarceration in a place of detention.

20          The Government did, in fact, recommend home detention

21   after considering preemptively some of the arguments that

22   Mr. Cruz made on his client's behalf at the detention hearing,

23   specifically noting that there had been a certain amount of

24   time that had passed between the date of offense and the date

25   of his federal charging, and considering that the danger that

1   this defendant seems to pose is when he's out in the community.

2   So naturally, the way to mitigate that danger, excuse me, is to

3   make sure that he is not out in the community without very

4   severe restrictions on his freedom of movement.

5          Obviously, Mr. Thai, if he is released on some sort of

6   home confinement or home incarceration, which I think are the

7   magic words here, obviously he has to be permitted the

8   opportunity to confer with his counsel.  I think he has to be

9   permitted to practice religion, and I think this Court can make

10  some exception for mental health.  To the extent that the Court

11  thinks that employment is in that same realm of importance,

12  then I think there needs to be some other level of protection

13  taken around that.  I think the suggestions that Ms. Murphy

14  makes that at a minimum the employer be informed of the pending

15  charges should be implemented.

16         The Government -- well, I don't know how often he's

17  working or how much money he's earning working, and to what

18  extent he is self-reliant or to the extent that he relies on

19  his family for monetary assistance, but I would query the

20  benefits of -- query what the benefits are of Mr. Thai

21  remaining employed for what appears to be a pretty small number

22  of hours per week, although I could be wrong on what he's

23  actually -- how many hours he's actually working versus the

24  risk that that poses, depending on how far away it is, how he

25  gets there, and again, what the environment is, whether or not

1    his employer and the other people who work there are aware of

2    what he currently stands charged of.

3              THE COURT:  So may I just ask you --

4              MS. PARUTI:  Yes.

5              THE COURT:  I know at the first hearing you moved for

6    detention, but said that there were conditions that could

7    mitigate, and your decision was based on -- your reasoning that

8    conditions could mitigate the danger was based on the fact that

9    a long time had gone by between the offenses charged here and

10   the arrest.

11             MS. PARUTI:  So my position that there were conditions

12   that could mitigate the danger he posed was based primarily on

13   conversations I had with members of the Probation Department

14   prior to his arrest.  Not Ms. Murphy, another probation officer

15   who I believe was here at the detention hearing.  Actually, she

16   was not.  It was a supervising probation officer explained what

17   the charges were and what I thought some of the logistical

18   issues would be, and she had represented that they -- where we

19   had given them notice in advance that they would be able to do

20   a home visit, if not that day, then in the days quickly

21   thereafter.

22             Some of the factors that played into the Government's

23   opinion that there were in fact conditions that could mitigate

24   both danger and risk of flight were the restrictiveness that

25   the Government understood home detention to encapsulate or

1    include.  I personally did not envision the schedule that's

2    outlined here --

3           THE COURT:  I did not either.

4           MS. PARUTI:  -- and I don't think that that's feasible

5    and I don't think that should continue, and I think the Court

6    obviously has the same concerns.

7           I think that to the extent the amount of time that had

8    pass -- so there's the two pieces.  One is the risk of flight

9    and then one is the danger, and I think frequently, in cases

10   where we're charging defendants with producing child

11   pornography in this type of end, sexually exploiting children

12   in this type of scenario where it does not involve a contact

13   offense by the defendant, I think there are sort of two realms

14   of danger and where the risks to the safety of the public lie.

15   One of them is in the defendants actual access to more victims,

16   which in this case appear to be surreptitiously recorded

17   children in a semi-public setting when they weren't aware of

18   his presence.  The other type of danger that we typically see

19   and that I was weighing in my head when I made -- when we made

20   the recommendation to the Court is the type of danger that's

21   present when defendants are then taking the material that they

22   have digitally and exploiting children through their use of the

23   internet, which I think is from their home.  We do not, at this

24   point, have any reason to believe that Mr. Thai falls into that

25   category of offenders, which is why the request was somewhat

1    different than in other circumstances or than in cases that may

2    appear to be similar to this case, because in those cases where

3    defendants are perpetrating various types of child exploitation

4    crimes from their homes, I think it's virtually impossible,

5    frankly, for Probation to supervise.  That's the type of

6    situation where even if they're literally doing a home visit

7    every day, you catch them if they're doing it, not we are

8    preventing the type of harm that you've allegedly shown that

9    you're capable of perpetrating or have been perpetrating

10   against different members of the community.

11          So in this particular case the Government believes

12   that in that time where he was on release conditions in the

13   state, obviously different charges in the state charges.  Right

14   now there's one case that's charged out of Middlesex County

15   that involves adult victims.  Again, a similar type of behavior

16   where it was apparently surreptitious recording of adults in

17   semi-public settings.  Obviously, he's facing different

18   penalties, so that's where the risk of flight comes into play.

19   But the danger, I think, is the same when you're talking about

20   restricting his access to the community.

21          In Middlesex, I understand he was released on some

22   bail conditions that were quite minimal when compared to what

23   the Government suggested and what the Court imposed and is

24   contemplating now, so I think the fact that he was on some sort

25   of release for some period of time and didn't appear to have

1    reoffended in the eyes of law enforcement to the Government

2    showed, and as Mr. Cruz argued at our last hearing, that at

3    some level the danger that Mr. Thai presents can be mitigated

4    by some sort of supervision.  I think here the highest level of

5    supervision is warranted and necessary, and to the extent that

6    the Court -- again, this came up at our hearing the other -- I

7    guess last week, if for some reason it appears that Mr. Thai

8    can't effectively be supervised on some sort of home basis,

9    home incarceration, with some sort of monitoring, then I think

10   the only other alternative is detention in a place of

11   incarceration.  But I think with a stricter schema it could

12   be -- I think the danger could be mitigated.

13          So I think I'll leave it there unless you have

14   specific questions.

15          THE COURT:  Okay, and you can speak again if you want.

16          Can I just ask you, Ms. Murphy, has there been any

17   issues with the third-party custodian's supervision, et cetera?

18          PROBATION OFFICER MURPHY:  No, your Honor.  I actually

19   did speak to him last week and he is fully prepared to continue

20   to be the third-party custodian and (inaudible) continue to

21   call his brother every day to check in.

22          THE COURT:  Okay.  And I also asked him to

23   periodically visit.  Is there any problem with that?

24          PROBATION OFFICER MURPHY:  He told me that at this

25   time he doesn't have any issue going to see his brother at his

1    home.

2         THE COURT:  And can I also ask you, I did order

3    individual counseling.  Anything on that?

4         PROBATION OFFICER MURPHY:  So Mr. Thai was in touch

5    with his psychiatrist and had scheduled to see him, actually,

6    today, but it had to be canceled because of this hearing, to

7    talk about getting a referral to the place where he goes.

8         THE COURT:  Okay.  Yes, Mr. Cruz?

9         MR. CRUZ:  Your Honor, I just want to address a couple

10   of procedural issues.  Ms. Paruti has done a good job of

11   justifying what her reasoning was for not requesting detention

12   at the original hearing, and she has not sort of ventured into

13   the realm of asking the Court to reconsider that as it's not

14   appropriate procedurally under 18, United States Code, Section

15   3142(f).  There was an agreement at the initial appearance not

16   to request detention on the part of the Government and they are

17   honoring that.

18        Aside from that, your Honor, we are not here in court

19   today because there is any allegation that Mr. Thai has

20   violated the conditions of his release set by this Court

21   previously at any time.  There's no evidence to that effect.

22   So the procedural basis for modifying or, at this point,

23   amending the conditions of his release to a stricter iteration

24   is not supported by 18, United States Code, Section 3148(b).

25        If the Court wishes to revisit the conditions

1    previously set and give the Probation Department, or get some

2    clarification from the Probation Department, regarding how the

3    Court's previously imposed conditions will be carried out, I

4    have no objection to that.  But as a procedural matter, I would

5    just point out on the record that the Court has the ability to

6    reopen this hearing and revisit conditions of release if newly

7    discovered evidence comes to the Court's attention under 18,

8    United States Code, Section 3142(f).

9           THE COURT:  Well, okay.  Let me just stop you because

10   I actually had to study that statute too myself.  But if you

11   look at 3142 and see Release on Conditions, and then you go all

12   the way down to (d) and then just go back up the last sentence

13   of (c), it says, "The judicial officer may, at any time, amend

14   the order to impose additional or different conditions of

15   release."

16          MR. CRUZ:  Yes, your Honor, and --

17          THE COURT:  So I don't have to have a change in

18   circumstances to do that.

19          MR. CRUZ:  I understand, your Honor.

20          THE COURT:  So --

21          MR. CRUZ:  And I understand, and I just wanted to

22   point out, and the Court is well aware, that generally, when we

23   do these things, there's a petition for action on conditions of

24   supervised release that's filed by the Probation Department and

25   that hasn't been done in this case, but I recognize and

 1    acknowledge the section of the statute that the Court has

 2    referenced.

 3         Also, your Honor, I think we're having a discussion,

 4    and with all due respect to everybody involved, there's a lot

 5    of hand-ringing that's going on about what's going to happen

 6    while Mr. Thai is on release.  I just want to state for

 7    purposes of the record that conditions of release need not

 8    guarantee safety to the community or the defendant's presence

 9    at court, but need only reasonably assure, quote/unquote, both,

10    and there's plenty of circuit law to support that.  I think

11    that the conditions that have already been set by this Court go

12    well on their way to reasonably assuring safety to the

13    community under the circumstances.

14         Specifically, your Honor had ordered in the

15    additional -- I'm sorry, in the conditions of release that were

16    previously set, that, under subsection (p), Mr. Thai

17    participate in one of the following location restriction

18    programs, and it's checked that he would be under subpart

19    (p)(ii) home detention, where he's restricted to his residence

20    at all times, except for various enumerated reasons, and the

21    Court added that family visits could be undertaken as long as

22    his schedule was provided to the Probation Department.  The

23    Court did have an opportunity to check box (p)(iii), which

24    states Home Incarceration, which is, I believe, what we were

25    talking about amping this condition up to today.  The

1    Government had an opportunity at that point to weigh in on that
2    condition, Probation had an opportunity to weigh in on that
3    condition, and it was not imposed.
4         So I guess at this point on the record I would object
5    to the Court making the conditions more restrictive under the
6    circumstances because there simply isn't a basis for it.  I
7    understand that the Court wanted, in the general course, to
8    have the Probation Department go to the home, speak to the
9    third-party custodian, et cetera.  But those things have been
10   done, there's no problem with regard to either, and in this
11   particular instance, we're talking about ratcheting up his
12   conditions of the release and making them more restrictive,
13   potentially, to keep him at home more, to make this a 24-hour
14   lockdown, as opposed to what the Court previously indicated in
15   P(ii), which is home detention, but you can leave as long as
16   you provide a schedule.  I think that the Court shouldn't alter
17   the conditions at this point because, again, there hasn't been
18   any allegation of inappropriate behavior or a violation at this
19   point, and there isn't any reason under the statute to amp up
20   his conditions and make them more restrictive at this point.
21        I understand that the Court may have some questions
22   about the schedules that he's provided, and it may be, quite
23   frankly, although I don't agree that a GPS monitoring situation
24   can be put -- should be put in place at this point, but that
25   may go some way toward alleviating concerns about his location

1    at any given time when he leaves the home, because the

2    monitoring currently only tells the Probation Department when

3    he's there and when he's not.  So the GPS may be an answer, but

4    as a procedural matter, I would object to the Court changing

5    any conditions that it has previously been -- that previously

6    were imposed at this point only because there simply isn't a

7    basis for it, under the statute or new information that's been

8    brought to the Court.

9            THE COURT:  Okay.  Thank you.

10           Yes, did you want to say something?

11           MS. PARUTI:  I just wanted to address that and two

12   other things.

13           So I just made it very clear the Government is not

14   moving pursuant to 3148 in making any sort of allegation that

15   there's some sort of violation of release conditions that were

16   set.  The Government agrees with the Court's interpretation

17   that 3142(c)(3) allows the Court to adjust conditions as

18   necessary in the Court's eyes at any point during the term of

19   release pending trial of the defendant.  In this particular

20   case, the Government recommended release on certain conditions.

21   I must admit, I did not read the form that the Court ultimately

22   checked off, but I think it's fair to say that when the

23   Government suggests a release plan, that it is proposed by

24   Probation with Probation's assurance that Probation will

25   conduct a home visit to verify that that particular release

1    plan is in fact viable based on all the circumstances of the

2    case, that the Government should not then be precluded from

3    voicing any opinion on additional conditions that the Court

4    might set in response to information that comes back from that

5    very home visit.

6           In this case, it's not procedurally unsound because

7    there's no, you know, quote, allegation of issues that have

8    come up based on the home visit.  In fact, based on the home

9    visit, Probation has raised a number of issues specifically

10   outlining their concern about the viability of the conditions

11   as they've been interpreted here and applied to this condition,

12   and their ability to mitigate risk.  The Government agrees that

13   conditions of release should not be read to guarantee the

14   safety of the community or guarantee that no person shall be

15   harmed by the defendant while he's on release.  That's

16   impossible.  It's written that way and courts construe it that

17   way to a defendant's benefit.  But the Government also should

18   not be hamstrung by that interpretation to not attempt to

19   mitigate to whatever degree of certainty possible the specific

20   dangers that a specific defendant poses to a specific

21   community.

22           And so I appreciate Mr. Cruz's, you know, attention to

23   the statute, but I think the interpretation is a bit misplaced,

24   and I think this Court has every right and every reason to

25   carefully scrutinize the conditions as they're being imposed,

1    as they're being played out or enforced, and as Probation is

2    evaluating them for the Court's benefit, which is really for

3    the community's benefit.  I don't see -- I did move for

4    detention at the initial appearance of the defendant and I said

5    but I believe there are conditions that are -- may be

6    sufficient to mitigate the danger that he poses and his risk of

7    flight, and that was all pending a review by the home visit and

8    review of the implemented conditions by Probation.

9         I would say that I certainly didn't, and I don't

10   recall to what extent -- I think the Court said if he needs to

11   see his family, that's included.  I think that raises another

12   issue.  It's unclear to the Government that all members of the

13   defendant's family even know that he's facing these charges,

14   and the Government has reason to believe that certain members

15   of his family didn't know that he was facing the other charges

16   that were already lodged by the state.

17        So I think if we're talking about giving a defendant

18   who is charged with exceedingly serious crimes that show that

19   he presents a true danger to the community, in evaluating

20   whether that danger can be mitigated should have extensive, and

21   the Court does have extensive, control over how those

22   conditions may be implemented, if there are any.  It may be

23   that the Court, after evaluating what Mr. Thai is willing and

24   able to submit to in the form of conditions, the Court might

25   find that it might disagree and find that there are no

1    conditions that can satisfy those concerns.

2         So I just think it's important that the record is

3    clear about what the Government intended and what the

4    Government actually said and did at all stages of the

5    proceedings.

6         MR. CRUZ:  Your Honor, could I just add one point, a

7    couple points?

8         With regard to the counseling situation, I just wanted

9    the Court to be aware that Mr. Thai has offered to the

10   Probation Department information regarding specific individuals

11   who can verify his attendance at these counseling sessions.

12   They would literally give some written confirmation of that.

13   So under the current memo that's provided to the Court, there

14   was a concern about that.  So he's provided them with the names

15   of individuals who can confirm his presence at these meetings.

16        In addition to that, your Honor, I would ask the Court

17   not to impose a condition regarding notification of the

18   employer.  That's not a standard condition.  It's not a

19   condition of release, it's not a condition that's listed in the

20   Court's previously listed order, and the only result of that is

21   going to be that he's going to lose his job.  For better or for

22   worse, he needs to be able to support himself and not rely on

23   his family members for financial support.  He's been working at

24   this job for a continuously long period of time at this point

25   and there haven't been issues, but he's asking that the Court

1    not impose that condition because it would certainly mean that

2    he'll be terminated.

3          THE COURT:  Is Mr. Thai facing a 15-year minimum

4    mandatory, is that a firm...

5          MS. PARUTI:  Yes, it is.

6          THE COURT:  Okay.  So I'm sorry to do this, but I

7    just -- I'm not comfortable with Mr. Thai being in the

8    community.  I don't see a way for him not to inform his

9    employer and not to lose his job, and I don't see the home

10   incarceration being a viable option.  The schedule that has

11   been outlined by Probation is just too -- there's too much

12   unaccounted-for time, and I think on balance I'm going to find

13   that there are not conditions that could guarantee the safety

14   of the community or his return to court.

15         So I am going to detain him.  I just think given

16   all -- at the original hearing, I feel that I just did not know

17   all the facts, and I'm going to order that he be detained

18   during the pendency of the case.

19         MR. CRUZ:  Note my objection, your Honor.

20         THE COURT:  I will.  And I'll issue an order later

21   today on that.

22

23         (The hearing was concluded.)

24

25

C E R T I F I C A T I O N

       I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 19 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

March 21, 2019

Date