UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
| ) | |
|     v.      ) | Docket No. 19-CR-10108-WGY |
| ) | |
| ERIC TRAN THAI,      ) | |
| ) | |
|     Defendant.      ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Pursuant to a binding plea agreement, defendant Eric Tran Thai pled guilty to a Superseding Information that charges him with two counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a sentence that includes a term of incarceration of 180 months[1] and supervised release for five years.

## FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 7 through 19 of the Presentence Investigation Report ("PSR"), as well Probation's assessment of offender characteristics (PSR 64-96).

## DISCUSSION

**I.  Sentencing Guideline Calculation and Restitution**

Based on its computation of the defendant's total offense level as 35 and his criminal history category as I, the United States Probation Office ("Probation") has computed a

---

[1] Because the charges in the Superseding Information each carry a maximum term of imprisonment of 120 months, the suggested sentence must be effected by imposing consecutive terms totaling 180 months (*e.g.*, 120 + 60 or 90 + 90). The government defers to the Court as to how best to structure such a sentence.

Guidelines sentence in this case to include a term of incarceration from 168 months to 210 months; the Guidelines range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, and thus agrees with its determination of his Guidelines Sentencing Range (GSR), which is adopted by and incorporated in the binding plea agreement.

The government has not received restitution requests from any of the identified victims (Minors 1, 2, 3, and 4). A victim impact statement from the parents of Minor 4 has been submitted under seal.

**II.      Application of the Section 3553(a) Factors**

The Guidelines range applicable in this case – and, frankly, the potential imprisonment contemplated by the plea agreement – most certainly does represent a significant range of punishment. The government contends that a sentence contemplated by the Guidelines, however, is one that reasonably fits the crime of which this defendant has been convicted. Based on an evaluation of all of the § 3553(a) factors, this Court should impose its recommended sentence, which is a mid-range Guidelines sentence.

The government recognizes that it is difficult to quantify exactly how many months would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same type of crime, and that would protect the most vulnerable members of our society. Ultimately, this Court can be confident that a Guidelines sentence will achieve all of these goals of sentencing.

A significant sentence is necessary to reflect the gravity of the defendant's crimes. This case is more than a "child pornography" case, as the defendant appears to characterize it. Here, the defendant snuck into the Boston Latin School on multiple occasions over a series of months.

He did so with one purpose: to film boys at the school at their most vulnerable – in the bathroom. He did so without their knowledge and without their consent. Having graduated from the school himself years earlier, he knew the layout and timed his surreptitious operations to maximize the likelihood that he would be able to slip in unnoticed – around dismissal time, as most kids were leaving the building for the day. On no fewer than 10 occasions, he hid in the boys' bathroom, set up his recording equipment, and ultimately was able to produce at least 30 unique videos[2] of unsuspecting students in situations that they had no reason to believe would be anything but private. Four of the boys, ranging in age from 12 to 17, were ultimately identified. The defendant was indicted for the sexual exploitation of those four boys; in the interest of plea negotiations, the government has agreed to dismiss those counts – each of which carries a 15 year mandatory minimum sentence – in exchange for the defendant's pre-litigation plea to charges that will not subject him to that mandatory minimum.

A Guidelines sentence is entirely reasonable and warranted in this case, notwithstanding the fact that it is, objectively, quite high. The fact that the Guidelines Sentencing Range for a defendant convicted of sexual exploitation of children has increased over the past three decades is, in the government's view, irrelevant to whether the current-day GSR is reasonable in the context of this case.[3] The fact that he is not accused of sexually abusing a child or otherwise seeking his child victims' participation in the offense may be pertinent to his treatment when he is released but should not be considered as a *mitigating* factor here, where such conduct would

---

[2] The defendant references nine videos featuring Minors 1, 2, 3, and 4. Def. Memo at 8. Those were the only *identified* minors; there were 45 videos that were created at Boston Latin, although six could not be opened. The other male students who were caught in various states of undress were not ultimately identified by law enforcement.

[3] The defendant's criticism of the child pornography guideline, § 2G2.2, is also irrelevant to this Court's decision regarding the appropriateness of the pertinent guideline, § 2G2.1.

support sentencing enhancements or separate charges (and resulting punishment) in and of themselves.  Here, what the defendant did is not merely "transgressing" laws.  Def. Memo at 7.  The government struggles to imagine how the defendant's criminal conduct can be described as anything *but* predatory.

The government has considered the defendant's history and characteristics, as they are outlined in the defendant's sentencing memorandum and appended Clinical Forensic Risk Assessment and Diagnosis.  That consideration, along with other factors, such as the desire to spare victims from potential testimony in court or other prolonged litigation, drove the government's agreement to dismiss the indictment charging offenses with mandatory-minimum terms of incarceration.  The government appreciates that the defendant has committed himself, post-arrest, to treatment, and expects that it should and will be a part of his life for years to come.  That motivation does not, however, sufficiently mitigate the need for a lengthy sentence as punishment for the reprehensible conduct at issue here; regardless of what led the defendant to capitalize on the vulnerability of the victims in this case, the effect on those victims is the same: disbelief, trauma, fear, hypersensitivity, and an overwhelming feeling of violation.  This is a predictable reaction to being filmed by a stranger in a place that is, for many families, a nurturing environment designed to foster their children's intellectual and individual growth. The government does not see its recommended sentence here as a "proxy" for sentencing "child sexual abusers."  Def. Memo at 14.  The recommended sentence is directly proportionate to the crime of conviction.[4]

---

[4] The defendant's observation that the high end of the Guidelines range here (210 months) is just 30 months shy of the statutory maximum is misleading.  *See* Def. Memo at 16.  The defendant was charged by indictment with four counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251.  The statutory maximum term of incarceration that he faced in the absence of the bargained-for proposal here (*i.e.*, a plea to two counts of possession of child

The defendant acutely points out that the Boston Latin material was the only child-focused material in the terabytes of data seized from the defendant's home, which included compulsively-collected adult pornography and years of the defendant's self-produced voyeuristic material of strangers in public places. The defendant's argument that this Boston Latin material constitutes an aberration should not deliver the level of comfort to this Court as is perhaps intended – instead, the Court should be concerned that the defendant turned to victimizing children when he essentially ran out of adults to videotape. This was not a one-time misstep – this was an ongoing, sustained pattern over a series of several months. Each time the defendant entered Boston Latin as school was releasing, he was making the decision to target children (or demonstrating that he was unable to avoid the compulsion to do so). Either way, to say that the Court should be concerned about the danger posed by this defendant would be an understatement.

Similarly, the fact that the defendant appeared to be an educated, gainfully employed,[5] functioning member of society whose criminal conduct came as a surprising revelation to those who knew him best demonstrates that we cannot rely on his family's perception of him to inform us about true danger (*i.e.*, the protection of the public), and there is no reason to believe that anything but a lengthy term in prison will deter this defendant and others from committing similar offenses in the future. Similarly, the fact that the defendant comes before this Court with no prior record is not a mitigating factor in the context of these offenses. The defendant's record was taken into consideration in the calculation of his criminal history category. *See*, *e.g.*, *United*

---

pornography, in violation of 18 U.S.C. § 2252A, with a 180-month cap on the potential term of incarceration) is 120 *years*.

[5] The defendant left his job prior to embarking on this spree at Boston Latin.

*States v. Oberg*, 877 F.3d 261 (7th Cir. 2017) (district judge properly noted that defendants in child pornography cases often have limited criminal histories).

The government recognizes that it is always difficult to quantify in months or years "how much" is "enough" to achieve the goals of sentencing. While the government's recommended sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for long-term protection of the public.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 180 months' imprisonment, to be followed by five years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

                    Respectfully Submitted,

                    NATHANIEL R. MENDELL
                    Acting United States Attorney

Date: May 11, 2021      By:   /s/ Anne Paruti
                                  Anne Paruti
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  One Courthouse Way
                                  Boston, MA 02210
                                  617-748-3100

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: May 11, 2021                                  /s/ Anne Paruti
                                                                                    Anne Paruti
                                                                                    Assistant United States Attorney